451 So.2d 477 (1984)
James A. GARDNER, et al., Appellants,
v.
Richard JOHNSON, Appellee.
No. 63665.
Supreme Court of Florida.
May 31, 1984.
Jim Smith, Atty. Gen. and M. Ann Garrison, Asst. Atty. Gen., Tampa, for appellants.
David B. McEwen, Tampa, for appellee.
ADKINS, Justice.
This case is before us on direct appeal from a decision of the Second District Court of Appeal which affirmed the trial court's determination that section 877.16, Florida Statutes (1979), is unconstitutional. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. The district court's decision is reported at 429 So.2d 1341 (Fla. 2d DCA 1983).
Section 877.16 states in its entirety:
877.16, Exhibition of deformed animals prohibited; penalty  Whoever shall exhibit for pay or compensation any crippled or physically distorted, malformed, or disfigured beast, bird, or animal in *478 any circus, show, or similar place, or any other place to which an admission fee is charged, whoever knowingly causes to be advertised any such exhibition, and whoever solicits or procures the attendance of others at such exhibition with knowledge of the nature thereof, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
Appellee owns and operates an animal show with which he travels about the state exhibiting the animals at various fairs and other events. In January of 1978 the animal show was closed in response to complaints received by Manatee County law enforcement authorities. In April of 1980 appellee filed a complaint for declaratory relief in the circuit court challenging the constitutionality of section 877.16 and its predecessor, section 867.02, Florida Statutes (1977).
The trial court, after a nonjury trial, declared section 877.16 unconstitutional and prohibited appellants from attempting to enforce the provisions of that statute against the appellee. On appeal, the district court affirmed the judgment of the trial court. Appellants then filed a timely notice of appeal to this Court.
Appellee argued at the trial level and on appeal that the statute lacked specific standards from which an average person could determine which animals may not be exhibited. This theory was accepted by the trial court and by the district court with each court relying heavily on the opinion of this Court in World Fair Freaks and Attractions, Inc. v. Hodges, 267 So.2d 817 (Fla. 1972). In World Fair Freaks, this Court declared unconstitutional the former companion statute to section 877.16, section 867.01, Florida Statutes (1971), which prohibited the exhibition for pay of deformed humans. A reading of that decision reflects that the plaintiffs in that case, who were themselves deformed humans, could earn no livelihood outside the freak show setting. This Court found it necessary to balance the sometimes conflicting factors of the right of all persons to earn a livelihood against the public health, morals and safety.
This concern cannot be applied to the present case. We cannot agree with appellee's contention that his right to work is being unconstitutionally infringed because he has invested a great deal of money in developing "his property rights to these beasts, birds and animals." To the contrary, we believe that the state's interest in protecting the public health, morals and safety of the public in general could encompass this legislation. One purpose would be, as appellant points out, to prevent the intentional maiming, crippling, disfigurement or induced malformation of animals. In any event, absent a violation of due process or other constitutional guarantees, we will not substitute our judgment as to whether the statute is accomplishing such a purpose for that of the legislature's. State v. Millington, 377 So.2d 685 (Fla. 1979). In this case, unlike World Fair Freaks, we have no interest of the individual to be weighed against the interest of society.
Appellee also asserts that the statute is unconstitutionally vague. As the district court noted, a statute must be definite enough to apprise a person of common intelligence of the activity sought to be proscribed. D'Alemberte v. Anderson, 349 So.2d 164, 169 (Fla. 1977); Connor v. Joe Hatton, Inc., 216 So.2d 209, 211 (Fla. 1968). The language of the statute must convey sufficiently definite warnings of the proscribed conduct when measured by common understanding and practice. Linville v. State, 359 So.2d 450, 451-52 (Fla. 1978). The operative language of this statute is the phrase "crippled or physically distorted, malformed, or disfigured." Each of these adjectives has a plain and ordinary meaning which can be readily understood by reference to a dictionary. We disagree with the conclusion of the trial court and the Second District Court of Appeal that the definitions of these words are difficult to apply or subject to unbridled discretion by officials attempting to enforce the statute. Small variances in the understanding *479 of individual officers which could possibly be clarified on closer reading of the statute do not necessarily show vagueness.
There is a presumption of constitutionality inherent in any statutory analysis. Scullock v. State, 377 So.2d 682, 683-84 (Fla. 1979). Appellee's assertions are insufficient to overcome this presumption.
Accordingly, we reverse the decision of the district court.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.