VILLANTI, Judge.
T. Patton Youngblood appeals the judgment entered in a wrongful death action following a jury trial. The Estate of Eduardo Villanueva (the Estate) filed a cross-appeal. We affirm without comment the issues raised on direct appeal and two of the four issues raised on cross-appeal. However, we reverse and remand for further proceedings on the cross-appeal issue wherein the trial court improperly applied section 324.021(9)(b)(3), Florida Statutes (2002), to limit Youngblood’s liability for noneconomic damages at $100,000. We also reverse and remand for further proceedings on the cross-appeal issue wherein the trial court improperly set off the settlement amounts received from the other defendants against the noneconomic damages awarded to the Estate pursuant to sections 46.015 and 768.041, Florida Statutes (2002).
The Estate filed a wrongful death action against Extreme Auto Sales, Maria Vega, Teddy Aponte, Fisher Auto Sales, Youngblood, and his ex-wife, Angela Youngblood.[1] Prior to trial, the Estate reached settlements with all the remaining defendants except Youngblood. The total amount of those pretrial settlements was $78,000. The Estate received a PIP benefit for wrongful death damages in an amount of $5,000.
*602 The testimony at trial established that Youngblood consigned his uninsured vehicle to Teddy Aponte of Extreme Auto Sales with instructions to sell the vehicle. Youngblood testified that he never wanted to see the vehicle again after he handed the keys to Aponte, and he gave him no time limit in which to sell the vehicle. Because Aponte was driving the vehicle for his personal use when he struck and killed Eduardo Villanueva, Youngblood contended that this constituted a theft or conversion which exempted him from liability.[2] However, the jury specifically rejected this contention as part of its interrogatory verdict.
The jury verdict also awarded the Estate $9,043.75 in economic damages for funeral and cemetery expenses and $190,000 in noneconomic damages for the pain and suffering sustained by Rosalina Villanueva as a result of her husband’s death. Youngblood thereafter sought a setoff of the pretrial settlement amounts against the overall verdict of $199,043.75. The trial court determined that the non-economic damage portion of the $78,000 of the pretrial settlements was $74,462, which the trial court deducted from the $190,000 jury award for noneconomic damages. The trial court capped those damages at $100,000 by applying section 324.021(9)(b)(3). The trial court then reduced the $9,043.75 in economic damages by the amount of the economic damages portion of the pretrial settlements, which was $3,538, and further reduced the amount by the $5,000 PIP payout, for a total amount of $505.75 in economic damages. These calculations are reflected in the final judgment entered by the trial court.
The trial court based its decision to cap noneconomic damages by applying section 324.021(9)(b)(3) which provides:
The owner who is a natural person and loans a motor vehicle to any permissive user shall be liable for the operation of the vehicle or the acts of the operator in connection therewith only up to $100,000 per person and up to $300,000 per incident for bodily injury and up to $50,000 for property damage. If the permissive user of the motor vehicle is uninsured or has any insurance with limits less than $500,000 combined property damage and bodily injury liability, the owner shall be liable for up to an additional $500,000 in economic damages only arising out of the use of the motor vehicle. The additional specified liability of the owner for economic damages shall be reduced by amounts actually recovered from the permissive user and from any insurance or self-insurance covering the permissive user. Nothing in this subparagraph shall be construed to affect the liability of the owner for his or her own negligence.
(Emphasis added.) In the judgment, the trial court found that although “there was not a direct ‘loan’ from the vehicle owner to the vehicle operator,” Youngblood was still liable for the acts of Aponte under the dangerous instrumentality doctrine, and therefore, in its opinion, section 324.021(9)(b)(3) still applied. Because the issue of whether a setoff is applicable hinges on whether a loan, directly or indirectly, occurred in this case, we turn to precedent from this court for guidance.
In Ortiz v. Regalado, 113 So.3d 57 (Fla. 2d DCA 2013),[3] Dolores Claudio Ortiz and *603 his son Andy shared title to a vehicle. Id. at 58-59. While driving the vehicle, Andy was involved in a fatal collision. Id. at 59. Ortiz argued on appeal that the limitation on liability under section S24.021(9)(b)(3) was applicable to him because the vehicle was negligently operated by a co-owner. Id. at 59-60. This court rejected this argument, noting that the word “loan” was not defined in the statute, but also finding that there was no clear intent of the legislature to give it a different meaning as between co-owners. Id. at 61. Importantly, the court looked to the definition of “loan” in section 265.565(2)(b), Florida Statutes (2012), for guidance:
Cf. § 265.565(2)(b), Fla. Stat. (2012) (defining “[l]oans,” “loaned,” or “on loan” as referring “to property in possession of the museum not accompanied by a transfer of title to the property or accompanied by evidence that the lender intended to retain title to the property and to return to take physical possession of the property in the future”) (emphasis added).
Id. at 60 n. 4.
Similarly here, although Youngblood did not transfer title to the vehicle and he did not intend to retake possession, assuming a sale were to occur, under the logic of Ortiz, this scenario does not constitute the type of “loan,” directly or indirectly, that would activate the provisions of section 324.021(9)(b)(3). In fact, Youngblood claimed that at the time of the accident Aponte was not even a permissive user but had stolen or converted the vehicle to his personal use. Therefore, giving the statutory words their plain meaning and factoring in the jury’s finding of no theft or conversion, Aponte’s possession of the vehicle could only emanate from a commercial consignment. Hence, section 324.021(9)(b)(3) is not applicable, and the trial court erred in applying it to cap non-economic damages at $100,000. Accordingly, we reverse that portion of the judgment and remand for the trial court to enter an amended final judgment in accordance herewith. .
Lastly, the trial court erred in setting off the settlement amounts received from the other defendants against the non-economic damage award pursuant to sections 46.015 and 768.041. Section 46.015(2) states the following:
At trial, if any person shows the court that the plaintiff, or his or her legal representative, has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.[4]
However, the supreme court in Wells v. Tallahassee Memorial Regional Medical Center, Inc., 659 So.2d 249, 253 (Fla.1995), specifically held that sections 46.015 and 768.041 do not apply to noneconomic damages. We therefore reverse that portion of the judgment setting off the settlement amounts against the noneconomic damages award and remand for the trial court to enter an amended final judgment in accordance herewith.
*604 Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
CRENSHAW and MORRIS, JJ„ Concur.

. The trial court granted Angela Youngblood’s motion for summary judgment on the basis that she was not liable under the mere naked title holder exception to the dangerous instrumentality doctrine, which this court affirmed in Youngblood v. Villanueva, 57 So.3d 859 (Fla. 2d DCA 2011) (table decision).

. This issue became a jury question after this court reversed the summary judgment entered in favor of Youngblood, holding, inter alia, that there were genuine issues of material fact concerning whether Aponte’s use of the vehicle constituted a theft or conversion. Estate of Villanueva v. Youngblood, 927 So.2d 955, 959-60 (Fla. 2d DCA 2006).

. Ortiz issued after the notice of appeal was filed in this case, and it was not available to the trial court when it rendered judgment.

. Section 768.041(2) contains slightly different terminology but is the same in substance.